UNITED STATES DISTRICT COURT MAGISTRATE JUDGE DENLOW
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE KENDALL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.   08 CR 009 |
| | ) | |
| JAMES KENNEDY and | ) | Violations: Title 18, United States |
| LEON AMIEL, JR., | ) | Code, Sections 1341, 1343, |
| a/k/a "LEON GLASS" | ) | 1513 (b)(2) and 2 |
| | ) | |
| | ) | **SUPERSEDING INDICTMENT** |
| | ) | |

**FILED**

J.N   MAR 1 9 2008
MAr 19,2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

The SPECIAL MARCH 2007 GRAND JURY charges:

1.    At times material to this indictment:

a.    A market existed for original limited edition fine art prints. Such prints were prepared from a master impression created by the artist, or under his direct supervision. The prints were thereafter produced in a quantity determined by the artist, and each print was inspected by the artist to ensure that it was of a quality level consistent with the artist's intentions. Prints approved by the artist were signed by the artist and each print in the sequence was uniquely labeled with a different number, except for a small number of copies retained by the artist or publisher for his own use. After production of the predetermined number of prints, the master impression was destroyed so as to ensure that the edition was truly limited.

b.    eBay was an internet auction site available on the World Wide Web at which computer users could mass-advertise items for sale by the process of auction. Sellers would transmit information, via computer to the eBay website, describing the property for sale and

inviting bids on the property. Potential customers would, by transmitting information via computer, bid on items for sale. The highest bidder would be deemed the winner of the auction, and the seller of the item and the buyer would communicate, frequently by e-mail, in order to arrange shipment of, and payment for, the merchandise.

c. As part of the eBay registration process, all eBay users had to agree to comply with eBay's User Agreement. The User Agreement prohibited the sale of counterfeits as well as unauthorized replicas or copies.

d. eBay rules prohibited buyers from engaging in "shill" bidding, which was the act of deliberately placing a bid on an item, without intending to actually purchase the item bid upon, in order to artificially drive up the price of an auction.

e. PayPal was a company owned by eBay which acted as an intermediary handling payments between buyers and sellers. An eBay user provided PayPal with a credit card number or bank account number. After a buyer and seller agreed on the price for a purchase, PayPal would charge the buyer's PayPal account, and remit the proceeds to the seller's PayPal account.

f. Defendant JAMES KENNEDY was a resident of Illinois and a principal in KFA of Illinois, Inc. and Kennedy Fine Arts, Illinois businesses which engaged in the sale and distribution of counterfeit artwork.

g. Defendant LEON AMIEL, JR., a/k/a LEON GLASS, was a resident of New

2

York and a principal in Glass Inter Corp and LLA International, New York businesses which engaged in the printing, distribution and sale of counterfeit artwork throughout the United States.

      h.     Michael Zabrin was a resident of Illinois and a principal in Fineartmasters and Zfineartmasters, Illinois businesses which engaged in the sale and distribution of counterfeit artwork

      i.     Art Dealer A was a resident of Illinois and a principal in Art Business A, an Illinois business which engaged in the sale and distribution of artwork, including counterfeit artwork.

      j.     Art Dealer B was a resident of Florida and New York and was a distributor of counterfeit artwork.

      k.     Art Dealer C was an art dealer doing business in New York.

    2.     Between approximately 2000 and January 2008, at Northbrook, in the Northern District of Illinois, Eastern Division, and elsewhere,

LEON AMIEL, JR., and
JAMES KENNEDY,

defendants herein, together with Michael Zabrin, Art Dealer A, Art Dealer B, and others known and unknown, devised and intended to devise, and participated in, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, in connection with the sale of limited edition fine art prints, which scheme is further described below.

3

3.     It was part of the scheme that defendants AMIEL and KENNEDY and their co-schemers knowingly acquired from various sources, including Art Dealer B, counterfeit prints of well-known artists, including among others, Alexander Calder, Salvador Dali, Marc Chagall, Roy Lichtenstein, Joan Miro and Pablo Picasso, in order to distribute and sell them as original limited edition fine art prints.  Defendants further knew that many of the counterfeit prints they had acquired bore forged signatures and/or false numerical or other markings making them appear as if they had been part of an original limited edition, or had been prepared for the artist's own use.

4.     It was further part of the scheme that defendants AMIEL and KENNEDY and their co-schemers falsely represented to their customers  that the prints they were selling were genuine limited edition prints signed and authorized by the artists.  The defendants and their co-schemers used eBay, as well as other means, to sell counterfeit prints.

5.     It was further part of the scheme that defendant AMIEL printed and distributed to his co-schemers, including KENNEDY, numerous counterfeit prints of prominent artists including, Alexander Calder, Marc Chagall, Salvador Dali, Marino Marini, Joan Miro and Pablo Picasso.

6.     It was further part of the scheme that defendant KENNEDY forged the signatures of certain artists, including Calder, Chagall, Miro and Picasso, on counterfeit prints he had received from defendant AMIEL and other sources in order to sell the prints as original works of the artists.

4

7.      It was further part of the scheme that defendants AMIEL and KENNEDY caused to placed false numerical and other markings on counterfeit prints, making them appear as if they had been part of an original limited edition or had been prepared for the artist's own use.

8.      It was further part of the scheme that defendants AMIEL and KENNEDY, along with co-schemer Zabrin, bartered counterfeit artwork amongst themselves to enhance the marketing and sale of their counterfeit artwork.

9.      It was further part of the scheme that after eBay suspended defendant AMIEL for violating eBay rules, AMIEL provided counterfeit art to Art Dealer A to sell on eBay.  AMIEL provided counterfeit artwork to Art Dealer A on consignment, meaning that Art Dealer A paid AMIEL a portion of the proceeds from the sale of each counterfeit artwork.

10.     It was further part of the scheme that defendant AMIEL, with Art Dealer A's knowledge, "shill bid" on the counterfeit prints AMIEL provided to Art Dealer A for sale on eBay in order to inflate the bidding price of the counterfeit prints.

11.     It was further part of the scheme that defendant KENNEDY, at times, consigned counterfeit art to co-schemer Zabrin, who paid KENNEDY a share of the proceeds upon sale.

12.     It was further part of the scheme that defendant AMIEL distributed counterfeit art to Art Dealer C, including approximately 2,500 counterfeit Calder prints, 600 counterfeit Chagall "Exodus" prints, and other counterfeit prints, knowing that Art Dealer C sold the prints as genuine limited edition prints.

13.    It was further part of the scheme that defendant KENNEDY offered and provided to some customers "certificates of authenticity," which he knew contained false representations about the artist, year of publication and number in the edition of the counterfeit prints defendant KENNEDY was selling.

14.    It was further part of the scheme that in or about January 2006, defendant KENNEDY sold a counterfeit Pablo Picasso print entitled "Francoise Gilot" to Purchasers A and B falsely claiming that he had obtained the print from the daughter of Pablo Picasso through the estate of Pablo Picasso.

15.    It was further part of the scheme that on or about February 3, 2006, defendant KENNEDY received from Purchaser A a check in the amount of $10,000 as partial payment for the counterfeit Picasso "Francoise Gilot" drawing.

16.    It was further part of the scheme that between in or about September 2006 and in or about November 2006, defendant KENNEDY and Art Dealer B knowingly caused to be manufactured a counterfeit Pablo Picasso drawing entitled "Francoise Gilot," which was sent from New York to Purchasers A and B in Virginia.

17.    It was further part of the scheme that in or about May 2006, defendant KENNEDY knowingly caused to be listed for sale on eBay a counterfeit Marc Chagall print entitled "Eiffel Tower," and falsely represented that the counterfeit Chagall print "Eiffel Tower" was an original signed limited edition.

6

18.    It was further part of the scheme that on or about June 5, 2006, defendant KENNEDY caused to be shipped via the United States Postal Service to an undercover agent purporting to be an art purchaser, a tube containing a counterfeit Chagall "Eiffel Tower"print which was falsely marked as "10/90" of a limited edition.

19.    It was further part of the scheme that on or about June 23, 2006, defendant KENNEDY faxed an order for counterfeit prints to defendant AMIEL seeking to purchase assorted counterfeit prints of well-known artists, including Alexander Calder, Marc Chagall, Salvador Dali, Joan Miro and Pablo Picasso.

20.    It was further part of the scheme that on or about June 17, 2006, Art Dealer A knowingly sold to Purchaser C in Japan a counterfeit Roy Lichtenstein print entitled "Joanna" for $1,125.

21.    It was further part of the scheme that on or about or about September 10, 2006, Art Dealer A knowingly sold to Purchaser C in Japan a counterfeit Roy Lichtenstein print entitled "Joanna" for $921.

22.    It was further part of the scheme that on or about December 30, 2006, Art Dealer A knowingly sold to Purchaser C in Japan a counterfeit Roy Lichtenstein printed entitled "Joanna" for $884.

23.    It was further part of the scheme that in or about March 2007, Art Dealer A knowingly listed for sale on eBay a counterfeit Roy Lichtenstein print entitled "Joanna."

24.     It was further part of the scheme that on or about March 29, 2007, Art Dealer A falsely represented in an e-mail to an undercover agent purporting to be an art purchaser that the Roy Lichtenstein "Joanna" print was appraised by "Leon Glass" and was authentic.

25.     It was further part of the scheme that on or about March 31, 2007, Art Dealer A received in his PayPal account $860 in proceeds for the sale to Purchaser D of a counterfeit Roy Lichtenstein print entitled "Joanna."

26.     It was further part of the scheme that on or about March 31, 2007, Art Dealer A knowingly caused to be shipped via the United States Postal Service a tube containing a counterfeit Roy Lichtenstein limited edition print entitled "Joanna" to Purchaser D in Nashville, Tennessee.

27.     It was further part of the scheme that defendant KENNEDY traveled to art shows throughout the country, including Florida, Illinois, Michigan, New Jersey, New York, North Carolina and Virginia, where he knowingly sold counterfeit artwork of prominent artists to customers as genuine limited edition prints.

28.     It was further part of the scheme that defendant KENNEDY used the United States mail and commercial interstate carriers to mail the proceeds from defendant KENNEDY'S sale of art, including counterfeit artwork, to Northbrook, Illinois.

29.     It was further part of the scheme that defendants AMIEL and KENNEDY, together with Art Dealer A, Art Dealer B, Zabrin and their co-schemers, knowingly sold counterfeit artwork at prices substantially in excess of the market value for inauthentic prints.

8

30.    It was further part of the scheme that defendant AMIEL received payments in the form of checks and PayPal disbursements totaling in excess of $213,000 for the sale of counterfeit art to wholesale and retail customers. In addition, defendant AMIEL received substantial payments in cash.

31.    It was further part of the scheme that defendant KENNEDY received in excess of $1,291,778 between in or about January 2005 and in or about January 2007 for the sale of art, including counterfeit artwork, to retail customers at art shows.

32.    It was further part of the scheme that defendant KENNEDY conducted approximately sixty-one successful auctions of counterfeit art on eBay, between February 2005 and January 2007, for which he received in excess of $39,000 from purchasers.

33.    It was further part of the scheme that Art Dealer A conducted approximately 228 successful auctions of counterfeit art on eBay, between April 2005 and April 2007, for which he received in excess of $61,000.

34.    It was further part of the scheme that the defendants and their co-schemers sold thousands of counterfeit prints to victims throughout the United States, and other countries during the course of the scheme, and received in excess of $1 million for the counterfeit prints.

35.    It was further part of the scheme that defendants AMIEL and KENNEDY and their co-schemers misrepresented, concealed and hid, and caused to be misrepresented, concealed and hidden, the purposes of and acts done in furtherance of the aforementioned scheme.

9

36.     On or about, February 3, 2006, at Northbrook, in the Northern District of Illinois, and elsewhere,

JAMES KENNEDY,

defendant herein, along with Art Dealer B, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be delivered by Federal Express, a commercial interstate carrier, according to the directions thereon, an envelope sent from Purchaser A in Richmond, Virginia to James Kennedy in Northbrook, Illinois, which envelope contained a check in the amount of $10,000 as payment for what purported to be a Pablo Picasso drawing entitled "Francoise Gilot";

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT TWO

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     Paragraphs 1 through 35 of Count One are realleged and incorporated as though fully set forth herein.

2.     On or about August 30, 2006, at Northbrook, in the Northern District of Illinois, and elsewhere,

### JAMES KENNEDY,

defendant herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted in interstate commerce between Northbrook, Illinois and Richmond, Virginia, certain signs and signals, namely, an e-mail which contained a digital photographic image of what purported to be a Pablo Picasso drawing entitled "Francoise Gilot";

In violation of Title 18, United States Code, Sections 1343 and 2.

11

## COUNT THREE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 35 of Count One are realleged and incorporated as though fully set forth herein.

2.    On or about May 25, 2006, at Chicago, in the Northern District of Illinois, Eastern Division,

JAMES KENNEDY and<br>
LEON AMIEL, JR.,

defendants herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted in interstate commerce between California and Illinois, certain writings, signs, signals, and sounds, namely an e-mail from eBay to an undercover agent purporting to be an art purchaser, stating that the undercover agent placed the winning bid on what purported to be an original signed limited edition Marc Chagall print entitled "Eiffel Tower";

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT FOUR

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 35 of Count One are realleged and incorporated as though fully set forth herein.

2.      On or about June 5, 2006, at Northbrook, in the Northern District of Illinois, and elsewhere,

JAMES KENNEDY and<br/>LEON AMIEL, JR.,

defendants herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be placed in an authorized depository for mail matter, and delivered according to the directions thereon, a tube containing a counterfeit Chagall print entitled "Eiffel Tower" to an undercover agent in Bridgeview, Illinois.

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FIVE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     Paragraphs 1 through 35 of Count One are realleged and incorporated as though fully set forth herein.

2.     On or about June 23, 2006, at Northbrook, in the Northern District of Illinois, and elsewhere,

JAMES KENNEDY and
LEON AMIEL, JR.,

defendants herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted in interstate commerce between JAMES KENNEDY in Northbrook, Illinois and LEON AMIEL, JR. in New City, New York, certain writings, signs, signals and sounds, namely, a facsimile transmission of an order for assorted counterfeit prints of Alexander Calder, Marc Chagall, Salvador Dali, Joan Miro and Pablo Picasso;

In violation of Title 18, United States Code, Sections 1343 and 2.

COUNT SIX

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 35 of Count One are realleged and incorporated as though fully set forth herein.

2.    On or about January 17, 2007, at Northbrook, in the Northern District of Illinois, and elsewhere,

JAMES KENNEDY,

defendant herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be sent and delivered by Federal Express, a commercial interstate carrier, according to the directions thereon, an envelope addressed to Individual A in Northbrook, Illinois, which envelope contained proceeds from the sale of art, including counterfeit prints, in excess of $15,525;

In violation of Title 18, United States Code, Sections 1341 and 2.

15

## COUNT SEVEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 35 of Count One are realleged and incorporated as though fully set forth herein.

2.    On or about June 18, 2006, at Orland Park, in the Northern District of Illinois, Eastern Division, and elsewhere,

### LEON AMIEL, JR.,

defendant herein, together with Art Dealer A, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted in interstate and foreign commerce between the PayPal account of Purchaser C in Tokyo, Japan, an account belonging to PayPal at the Wells Fargo Bank in Minnesota, and the bank account belonging to Art Dealer A in Palos Heights, Illinois, certain writings, signs, signals and sounds, namely, a payment in the amount of $1,147 for the purchase of what purported to be a Roy Lichtenstein print entitled "Joanna";

In violation of Title 18, United States Code, Sections 1343 and 2.

16

## COUNT EIGHT

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 35 of Count One are realleged and incorporated as though fully set forth herein.

2.      On or about March 29, 2007, at Orland Park, in the Northern District of Illinois, and elsewhere,

### LEON AMIEL, JR.,

defendant herein, together with Art Dealer A, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted in interstate commerce between Art Dealer A in Orland Park, Illinois and an eBay server in California, certain writings, signs, signals and sounds, namely, a posting containing a false representation that the counterfeit Lichtenstein print entitled "Joanna" that Art Dealer A offered for sale was authentic and had been appraised by "Leon Glass;"

In violation of Title 18, United States Code, Sections 1343 and 2.

17

## COUNT NINE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     Paragraphs 1 through 35 of Count One are realleged and incorporated as though fully set forth herein.

2.     On or about, March 31, 2007, at Orland Park, in the Northern District of Illinois, and elsewhere,

### LEON AMIEL, JR.,

defendant herein, together with Art Dealer A, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be delivered by the United States Postal Service, according to the directions thereon, a tube sent from Art Dealer A in Orland Park to Purchaser D in Nashville, Tennessee, which tube contained a counterfeit Roy Lichtenstein print entitled "Joanna";

In violation of Title 18, United States Code, Sections 1341 and 2.

<u>COUNT TEN</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

On or about January 8, 2008, in the Northern District of Illinois, Eastern Division,

JAMES KENNEDY,

defendant herein, knowingly threatened bodily injury to another person, with intent to retaliate against such person for giving information relating to the possible commission of a Federal offense, namely, KENNEDY's involvement in a scheme to produce and distribute counterfeit art, that had been communicated by such person to a law enforcement officer;

In violation of Title 18, United States Code, Section 1513(b)(2).

## FORFEITURE ALLEGATION

The SPECIAL MARCH 2007 further charges:

1.      The allegations contained in Counts One through Eight of this Indictment are realleged and incorporated herein by reference for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      As a result of their violations of Title 18, United States Code, Sections 1341 and 1343, as alleged in the foregoing Indictment,

JAMES KENNEDY and
LEON AMIEL, JR.,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offenses.

3.      The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include, but are not limited to $1 million.

4.      If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants:

(a)      Cannot be located upon the exercise of due diligence;

(b)      Has been transferred or sold to, or deposited with, a third party;

20

(c)    Has been placed beyond the jurisdiction of the Court;

(d)    Has been substantially diminished in value; or

(e)    Has been commingled with other property which cannot be divided
without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, under the

provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United

States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United

States Code, Section 2461(c).


A TRUE BILL:


_____
FOREPERSON


_____
UNITED STATES ATTORNEY

21